**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ALFREDO CRESPIN, OTHMAN DAHHANE, PAUL FOUGHT, CONSOLUTA CAMA KINSEY and ROBERT SHEEHAN,**

      **Plaintiffs,**

**v.**                                                                                     **Case No: 6:16-cv-276-Orl-31DAB**

**TERRY L. RHODES,**

      **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss Second Amended Complaint (Doc. 43) filed by the Defendant, Terry Rhodes, and the response in opposition (Doc. 45) filed by the Plaintiffs.

**I.    Background**

Florida law provides that a driver whose license has been suspended may request either a formal review or an informal review to challenge the suspension. Fla. Stat. § 322.2615(1)(b)(3). The informal review is conducted by a hearing officer and consists solely of a review of any material submitted by the law enforcement officer who initiated the suspension and by the driver. Fla. Stat. § 322.2615(4). In a formal review, the hearing officer is also authorized, *inter alia*, to administer oaths, examine witnesses, take testimony, receive evidence, and issue subpoenas. Fla. Stat. § 322.2615(6)(b). In both types of hearing, the hearing officer is designated by the Florida Department of Highway Safety and Motor Vehicles (henceforth, the "DMV"). Fla. Stat. § 322.2615(4), (6)(b). In either case, if the hearing officer determines that the suspension should

be sustained, the driver may appeal by filing a petition for writ of certiorari to the Circuit Court. Fla. Stat. § 322.2615(13).

According to the allegations of the Second Amended Complaint (Doc. 42) (henceforth, "SAC"), which are accepted in pertinent part as true for purposes of resolving the instant motion, the Plaintiffs are Florida residents whose driver's licenses have been suspended.  (SAC at 3-7). The Defendant, Rhodes, is the former chief of staff and current executive director of the DMV. (SAC at 1).  As described in more detail below, the suspensions occurred after each Plaintiff was charged with driving under the influence ("DUI"), refusing to take a blood alcohol level test, or both.  (SAC at 3-7).

The Plaintiffs contend that the formal/informal review procedure set forth in Fla. Stat. § 322.2615 does not provide for a constitutionally adequate post-deprivation hearing.  Because of this, they argue that in suspending their licenses, the DMV violated their right to due process. (SAC at 2).  They bring the instant case – a putative class action – pursuant to 42 U.S.C. § 1983. In Count I, which is brought against Rhodes in her official capacity, the Plaintiffs seek a declaratory judgment that the DMV's license-suspension procedures are unconstitutional.  (SAC at 25-26).  In Count II, the Plaintiffs seek damages from Rhodes in her individual capacity. (SAC at 26).  By way of the instant motion, Rhodes seeks dismissal of both counts.

**II.     Legal Standards**

A.     Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984).   In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.   *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).   The Court must also limit its consideration to the pleadings and any exhibits attached thereto.   Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1302 (11th Cir. 2007).   Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.   *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

B.     Section 1983 and Due Process

42 U.S.C. § 1983 provides a private cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by anyone acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."   The Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be taken away except pursuant to constitutionally adequate procedures.   *See*, *e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The United States Supreme Court has held that the Due Process Clause applies to the deprivation of a driver's license by a state.   Accordingly, such licenses "are not to be taken away without that procedural due process required by the Fourteenth Amendment."   *Bell v. Burson*, 402 U.S. 535, 539 (1971).   However, due process does not require that a state provide an evidentiary hearing

before suspension or revocation, so long as license holders are given sufficient notice and opportunity to be heard post-deprivation. *Id.*

### III.   Analysis

Each Plaintiff is a resident of the Middle District of Florida, except for Consoluta Kinsey, who resides in the Northern District.   The SAC does not provide dates as to when any of the suspensions occurred, except that all occurred within the four years preceding the filing of the Second Amended Complaint.   Each Plaintiff contends that his or her license was suspended without due process of law; however, each presents a slightly different factual scenario:

- Alfredo Crespin had his license suspended for one year after he refused a blood alcohol level breath test and was criminally charged with DUI.   (SAC at 3).   He declined both the informal and formal review hearings before a DMV hearing officer.   (SAC at 4).   He intends to apply for reinstatement of his license following the expiration of the suspension.   (SAC at 4).

- Othman Dahhane had his license suspended after being charged with DUI.   (SAC at 4).   The DUI charge was later dismissed, but Dahhane's license was not reinstated.   (SAC at 4).   Dahhane sought review of his suspension at a formal review hearing.   (SAC at 4).   The suspension was upheld.   (SA   at 4).   Dahhane then filed a petition for writ of certiorari to the Circuit Court, which affirmed the decision of the hearing officer.   (SAC at 4-5).   Dahhane then filed an appeal to the District Court of Appeal, which affirmed the decision of the Circuit Court.   (SAC at 5).   Dahhane also intends to apply for reinstatement of his license after the suspension concludes.   (SAC at 5).

- Paul Fought also had his license suspended after being charged with DUI. (SAC at 5). Fought declined to pursue a review of the suspension and intends to seek reinstatement of his license after the suspension concludes. (SAC at 5).

- Consoluta Kinsey was charged with DUI and with refusing a blood alcohol level test;[1] her license was suspended. (SAC at 6). Kinsey went through a formal review hearing, but the suspension of her license was affirmed. (SAC at 6). She did not appeal that decision to the Circuit Court. (SAC at 6). Kinsey's license has been reinstated, but the DMV has threatened to suspend it again unless she "provides a certification from a medical doctor that she is not subject to panic or anxiety attacks that render her unable to operate a motor vehicle." (SAC at 6-7).

- Robert Sheehan refused a breath test and was charged with DUI, resulting in the suspension of his license. (SAC at 7). He pleaded no contest to reckless driving in exchange for the State dropping the DUI charge. (SAC at 7). He declined to seek review of his suspension and intends to pursue reinstatement after the suspension runs its course. (SAC at 7).

The Plaintiffs who declined to pursue either a formal or informal review allege that they did so out of a belief that the DMV-appointed hearing officer would not be a "fair, impartial and unbiased arbiter" and that the hearings "lacked adequate procedural due process safeguards and a fair and meaningful appellate review." (SAC at 4, 7). Those who did pursue such hearings allege that the hearing officers were not fair and impartial and that the hearings lacked adequate due process safeguards and meaningful appellate review. (SAC at 5, 6). Aside from implying

---

[1] Kinsey contends that she attempted to take the test but was unable to produce a sufficient breath sample. (SAC at 6).

that the hearing officers could not be unbiased because they were appointed by the DMV, the Plaintiffs do not provide any specifics regarding the hearings.  For example, they do not identify any due process safeguards that should have been employed, and they do not explain how the ability to file a petition for certiorari with the Circuit Court does not constitute meaningful appellate review.

### A.     Count I – Section 1983 – Declaratory Relief

In their first count, asserted pursuant to 42 U.S.C §1983, the Plaintiffs seek a declaratory judgment against Rhodes in her official capacity.  More particularly, the Plaintiffs seek a declaration "that the practices and procedures constituting practices and procedures [sic] of the [DMV] undertaken by Rhodes under color of state law deprived Plaintiffs and others similarly situated of property rights protected under the Fifth Amendment in violation of the guarantee of procedural due process under the Fourteenth Amendment."  (SAC at 25-26).  Rhodes makes several arguments in favor of dismissal of this count, including that the Plaintiffs lack standing to proceed on such a claim.  Because the issue of standing implicates the Court's subject matter jurisdiction, it must be addressed as a threshold matter.  *See*, *e.g.*, *National Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003).

To establish standing under Article III of the United States Constitution, a party must demonstrate three things: first, what is referred to as an "injury-in-fact"; second, a causal connection between that injury-in-fact and the challenged action of the defendant; and third, that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  In addition, to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is

a substantial likelihood that he or she will suffer injury in the future.  *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citations omitted).

> Consistent with the "cases" and "controversies" requirement of Article III, the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an "actual controversy."  *See Emory v. Peeler,* 756 F.2d 1547, 1551–52 (11th Cir.1985).  Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties.  *Id.* at 1552.  "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."  *Id.* (internal quotations omitted).

*Id.* at 1347.

   The Plaintiffs argue that they possess standing because they suffered an injury-in-fact – *i.e.*, the denial of their procedural due process rights in regard to the suspension of their drivers' licenses – that is traceable to the "statutory framework imposed by the Defendants [sic]."  (SAC at 6-7).  But while these allegations likely suffice to establish standing to sue for damages, they are not enough to establish standing to sue for equitable relief.  *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983) (police officer's illegal chokehold "presumably afford[ed] Lyons standing to claim damages against the individual officers and perhaps against the City," but standing to seek injunction against chokehold policy "depended on whether he was likely to suffer future injury from the use of chokeholds by police officers.").  The Plaintiffs have failed to allege facts that make it appear substantially likely that they will suffer injury in the future as a result of the DMV's allegedly unconstitutional license-deprivation procedures.  According to the allegations of the Second Amended Complaint, it appears that most of the Plaintiffs – all but Kinsey – do not even have a driver's license at this time, and therefore face no risk of being deprived of that license without due process.

...

...

...

As for Kinsey, there is nothing in the Second Amended Complaint to suggest that she faces a real and immediate threat of having her license suspended so as to be subject to the formal/informal review procedure of which she and the other Plaintiffs now complain.  She has alleged that DMV is threatening to suspend her license unless she produce a doctor's letter certifying that she is not subject to panic attacks rendering her unable to drive.  (SAC at 7).  But she has not alleged that she will be unable or unwilling to provide such a letter.

The Plaintiffs have failed to establish their standing to seek a declaratory judgment. Accordingly, Count I will be dismissed.

>	B.	Count II – Section 1983 -- Damages

In Count II, the Plaintiffs sue Rhodes in her individual capacity, seeking an award of damages.[2]  Rhodes also argues that the Plaintiffs lack standing to pursue a damages claim, but the Court finds that, for present purposes, the allegation that the Plaintiffs were deprived of their due process rights is sufficient to establish standing to pursue a damages claim.

However, unlike an official-capacity claim, which generally represents only another way of pleading an action against the entity of which an officer is an agent, personal capacity suits seek to impose personal liability upon a government official for actions he or she took under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  But there are no allegations in the Second Amended Complaint that Rhodes, personally, took any action whatsoever, much less that she affirmatively acted to deny due process to any of these Plaintiffs.  The fact that Rhodes is the executive director of the agency that (allegedly) violated the Plaintiffs' constitutional rights is not

---

[2] The only damages specifically mentioned are fees paid for reinstating of suspended licenses.  (SAC at 26).

enough, on its own, to assert a claim against Rhodes in her individual capacity.[3]  That fact, however, is all that the Plaintiffs have alleged.

The Plaintiffs have failed to state a claim for damages against Rhodes in her individual capacity.   Accordingly, Count II will be dismissed.

### IV.    Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss Second Amended Complaint (Doc. 43) filed by the Defendant, Terry Rhodes, is **GRANTED**, and the Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE**, as set forth above.   If the Plaintiffs wish to file an amended pleading, they must do so on or before October 6, 2016.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 22, 2016.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[3] Indeed, given that the Plaintiffs have not set forth the dates on which their suspensions occurred, and given that Rhodes has only been executive director of the DMV since 2014, (SAC at 2), it is not clear that Rhodes was in charge of the agency when the constitutional violations would have occurred.